UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-CV-80368-RLR
19-CR-80136-RLR

BRIAN SIGOUIN

        Plaintiff,

vs.

UNITED STATES,

        Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [ECF No. 14]

Brian Sigouin, represented by counsel, moves to vacate his guilty plea and sentence based on violations of the Fourth, Fifth, Sixth, and Eighth Amendments to the U.S. Constitution.

## I.     PETITIONER'S CLAIMS

1.    Defense counsel did not inform him that there was a five-year mandatory minimum sentence if he pled guilty to the charges, nor did counsel inform him about the Sentencing Guidelines. Counsel told him that the Government was only going to seek a sentence of 3-5 years if he pled.  Had he been properly advised, Mr. Sigouin would not have pled guilty.

2.    Defense counsel failed to prepare diligently for the suppression hearing, allowed a less-experienced lawyer to handle the hearing, and did not challenge the qualifications of the Government's expert witness.

3.      A sentence of 97 months incarceration, 15 years of supervised release, and $36,000 in restitution was cruel and unusual punishment.

4.      Because of the effects of pain-killing medication, Mr. Sigouin did not voluntarily consent to a search of his residence.

5.      The FBI did not advise Mr. Sigouin of his *Miranda* rights before speaking to him.

## II.      PROCEDURAL HISTORY

On May 17, 2018, the FBI executed a search warrant at Mr. Sigouin's residence.  Over a year later, on July 30, 2019, a grand jury returned a four-count indictment charging Mr. Sigouin with one count of receiving child pornography and three counts of possessing child pornography. Cr. ECF No. 1.  Mr. Sigouin had his initial appearance on August 2, 2019. Cr. ECF No. 4.   He was released on bond on August 9, 2019.  Cr. ECF No. 7.

He was arraigned on August 15, 2019. Cr. ECF No. 9.  At that time, Attorney Ashley Kay entered a permanent appearance on his behalf.  Cr. ECF No. 8.

On October 28, 2019, Mr. Sigouin's trial counsel filed motions to suppress the evidence obtained with the search warrant and statements made by Mr. Sigouin at the time of the search. Cr. ECF Nos. 21, 22.  A supplemental motion to suppress was filed on November 18, 2019. Cr. ECF No. 32.  I conducted an evidentiary hearing on the motions to suppress.  Cr. ECF No. 42, 44.  Those motions ultimately were denied. Cr. ECF No. 46, 54.

2

On January 2, 2020, Mr. Sigouin pled guilty to all four counts in the Indictment, pursuant to a written plea agreement.  Cr. ECF No. 55, 58.  He was sentenced on March 12, 2020, to 97 months imprisonment. Cr. ECF No. 70.  Judgment was entered on March 23, 2020.  Cr. ECF No. 73.  No direct appeal was filed.

### III.    TIMELINESS

Mr. Sigouin's timely filed his § 2255 petition on February 18, 2021. ECF No. 1. His amended motion was filed on April 5, 2021.  ECF No. 14.

### IV.    LEGAL STANDARD

To establish ineffective assistance of counsel, a defendant must prove both "(1) that 'counsel's performance was deficient' because it fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense[.]'" *E.g.*, *Crawford v. Head*, 311 F.3d 1288, 1296 (11th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The defendant "bears the burden of proof regarding both deficient performance and prejudice." *Harvey v. Warden*, 629 F.3d 1228, 1238 (11th Cir. 2011). This burden is "a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). "Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (citation omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (conclusory allegations supporting § 2255 claim do not warrant evidentiary hearing).

In assessing deficiency, Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689; *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996)

3

(for purposes of the deficiency prong, "[a] strong presumption exists that the challenged action constitutes sound trial strategy."). "[B]ecause counsel's conduct is presumed reasonable, for [Movant] to show that the conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take," or failed to take the action that counsel failed to take. *See Chandler v. United States*, 218 F.3d 1305, 1314–15 (11th Cir. 2000) (en banc). To meet this standard, Movant "must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance." *Id.* at 1314 (citation and internal quotation marks omitted). "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (collecting cases).

To prove prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's failure to raise a meritless claim is not prejudicial under *Strickland. Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014).

In order to be entitled to an evidentiary hearing, defendant must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *See Aron v. United States*, 291 F.3d 708, 715, n. 6 (11th Cir. 2002)); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (claim of ineffective assistance of counsel subject to

4

dismissal without a hearing if it consists of "conclusory allegations unsupported by specifics"). And, no evidentiary hearing is required for "contentions that in the face of the record are wholly incredible." *See Stano*, 901 F.2d  at 899 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

## V.    DISCUSSION

A. *Ground One – Plea and Sentencing*

Mr. Sigouin first argues that his counsel was constitutionally ineffective for not advising him that he faced a five-year mandatory minimum sentence.  The record clearly shows that Mr. Siguoin was told multiple times about the mandatory minimum sentence and acknowledged it.

At his initial appearance, Judge Brannon asked the prosecutor to state "the potential maximum *and any minimum* sentences that Mr. Siguoin is looking at."  The prosecutor then stated, "As to Count 1, your Honor, he's facing a maximum penalty of 20 years' incarceration.  *There's a five-year mandatory minimum* prison sentence, a lifetime of supervised release, with a minimum of five years supervised release, a $250,000 fine, a $5000 special assessment, a $100 special assessment and restitution."  Judge Brannon then asked, "Sir, do you understand the potential maximum sentence that you're looking at?" The defendant responded, "Yes, Sir." ECF No. 18-2 at 3 (emphasis added).

At the arraignment, Judge Matthewman told Mr. Sigouin, "If you're convicted of Count 1, you are facing up to 20 years in federal prison *with a five-year mandatory minimum prison sentence.*"  ECF No. 18-3 at 4 (emphasis added).

5

Paragraph 4 of the plea agreement that Mr. Siguoin signed said, "The defendant understands and acknowledges that as to Count 1, the Court must impose *a minimum term of imprisonment of five (5) years*, and may impose a maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of five (5) years' [sic] to life."  ECF No. 18-13 at 2 (emphasis added).  During the plea colloquy, the prosecutor again stated, "As to count one, [Mr. Siguoin] faces *a five-year minimum mandatory prison sentence* to a maximum of 20 years followed by a term of supervised release of five years to life." ECF No. 18-14 at 9 (emphasis added).  Judge Rosenberg later asked, "Mr. Sigouin, did you understand everything that Mr. Schiller just outlined which was not a verbatim reading of the plea agreement but rather a summary of the key provisions, although every provision is important but really a summary of the plea agreement?  Did you understand everything?"  *Id.* at 12.  Mr. Sigouin responded, "Yes, I did."  Later, Judge Rosenberg returned to this topic:

> The Court:   Now, I want to review with you again, because Mr. Schiller did go over it and it is in the plea agreement, but I just want to reinforce it, and that is the maximum possible penalty provided by law that you face as a result of pleading guilty to the counts that you are pleading guilty to. And I, in particular, am focused on paragraphs four and five. We will be begin there and then follow through of the plea agreement.
>
> So first, I want to make sure that you understand and acknowledge that as to count one, that the Court must impose a minimum term of five years and may impose a maximum term of imprisonment of up to 20 years -- so let's stop there -- meaning the Court can't go below five years unless, for example, the Government were to file a motion. Sometimes there are certain types of motions the Government can file; but absent any motion from the Government, the Court statutorily under the law has no discretion to go below the minimum term of five years and cannot go higher than 20 years. Do you understand that part of it for count one?

Mr. Sigouin:  Yes.

*Id.* at 14-15.

The undisputed evidence in the record shows that Mr. Sigouin knew he was facing a mandatory minimum 5-year sentence on January 2, 2020, when he pled guilty instead of proceeding to trial. Nevertheless, Mr. Sigouin now claims that his counsel told him on January 5, 2020, that the Government was offering a 3-5 year sentence in return for a plea.  Mr. Sigouin claims that he accepted the plea offer believing he would receive a sentence of no more than 5 years.  This present claim is directly refuted by his statements under oath during the plea colloquy on January 2, 2020, which predated the alleged 3-5 year plea offer.

Mr. Sigouin also claims that his counsel informed him that the Government's initial plea offer was for 5 years, but that counsel believed a better offer would come later.  ECF No. 14 at 4.  He claims that if he had known this was the best offer the Government would make, he would not have litigated the motion to suppress and would have pled guilty to the five-year offer.  There is no credible evidence in the record that such a plea offer was made.  Moreover, even if the Government had recommended a 5-year sentence, the statutory maximums for each count were 20 years.  Judge Rosenberg would not have been bound by the Government's recommendation.  She ultimately concluded that the proper balancing of the 18 U.S.C. § 3553 factors required a 97-month sentence, which was below the 120-month advisory Guidelines range.  Mr. Sigouin cannot show prejudice.

7

Mr. Sigouin also claims that he was never "informed of the concept of sentencing guidelines." *Id.* at 4. He claims he only learned about the sentencing guidelines after sentencing. *Id.* This claim is conclusively refuted by the record. Paragraph 2 of the plea agreement states that Mr. Sigouin is "aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements." ECF No. 18-13 at 1. During the plea colloquy, he acknowledged under oath that he understood that the Court would consider the federal sentencing guidelines in computing his sentence. ECF No. 18-14 at 8-9. He told Judge Rosenberg, under oath, that he had discussed the Guidelines with his lawyer and that he did not need any more time to discuss them with his lawyer. ECF No. 18-14 at 21-22.

Finally, he asserts that his lawyer did not file a motion for downward departure at sentencing. That is wrong. At sentencing, his counsel asked for a sentence below the advisory guidelines range based on multiple grounds. *See* ECF No. 18-15 at 16-23, 33-34.

B. *Ground Two - Motion to Suppress*

Mr. Sigouin argues that his counsel was constitutionally ineffective in litigating the suppression motion. Having presided over the suppression hearing, I was able to directly observe counsel's performance. Ms. Kay was a forceful and thorough advocate who raised the appropriate arguments. The motion to suppress was denied because the merits required it, not because of any deficiency in Ms. Kay's advocacy.

8

Mr. Sigouin also argues that counsel should have retained an expert in information technology and should have called his treating physician, Dr. Appleton, to testify that Mr. Sigouin was taking medication that affected his ability to give a voluntary statement to the FBI.  The decision whether to call a witness is committed to the sound discretion of trial counsel "and it is one that we will seldom, if ever, second guess" in a §2255 review.  *Shaw v. United States,* 729 Fed. Appx. 757, 759 (11th Cir. 2018).  As noted above, to establish a constitutional violation, a "petitioner must establish that no competent counsel would have taken the action that his counsel did take."  *Id.* (citing *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000)).  Mr. Sigouin has not met this standard.

First, he does not explain what the information technology expert would have said, and why it would have mattered.  Ultimately, the search of the residence was justified by the good faith exception to the exclusionary rule, which did not turn on the nature of the technology.  So, even assuming counsel had been deficient by not calling an information technology expert, there was no prejudice.

Second, as to the voluntariness of Mr. Sigouin's statement, defense counsel called his treating psychiatrist to testify about the medications that Mr. Sigouin was taking.  I found that the psychiatrist "credibly testified that these medications could cause a patient to be inattentive and drowsy."  ECF No. 46 at 24.  Ultimately, I found the most compelling evidence of voluntariness to be the recorded discussions with Mr. Sigouin.  *Id.*  Further testimony from another treating physician would not have changed my conclusion.  Here, too, Mr. Sigouin has not shown prejudice.

Finally, Mr. Sigouin argues that counsel should have objected to expert testimony offered by Special Agent Dan Alfin. Special Agent Alfin never provided expert testimony. He testified primarily about his interactions with Mr. Sigouin while the search warrant was being executed. Counsel's decision not to object to Special Agent Alfin's testimony was within her strategic discretion. It was not constitutionally deficient, nor was it prejudicial.

C. *Ground Three – Eighth Amendment*

Mr. Sigouin alleges that his sentence violated the cruel and unusual punishment clause of the Eighth Amendment. First, this argument is procedurally barred because it could have been raised on direct appeal and was not. *United States v. Frady,* 456 U.S. 152, 167–68 (1982). Second, as a matter of law, the 97-month sentence did not violate the Eighth Amendment. A sentence is cruel and unusual if it "grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271 (1980). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 272. Here, the sentence was less than half of the statutory mandatory sentence of 20 years for any count. It was approximately 10% of the 80 years of maximum exposure to which Mr. Sigouin pled. Given the broad deference owed to legislative decisions about non-capital sentences, *see id.* at 274, Mr. Sigouin has not shown that his 97-month sentence was so disproportionate to his criminal conduct that it rose to the level of cruel and unusual punishment. Finally, because the sentence was constitutional, counsel was not deficient for not making an Eighth Amendment challenge and/or

10

reasonably exercised his strategic discretion not to raise this issue.

D. *Ground Four – Fourth and Fifth Amendments*

Mr. Sigouin seeks to relitigate his claim that the search of his home and the taking of his statement violated his rights under the Fourth Amendment and *Miranda v. Arizona.* These claims were previously adjudicated on the merits in the trial court and any challenge to that ruling was waived by Mr. Sigouin's guilty plea. *See United States v. Bonilla,* 579 F.3d 1233, 1240 (11th Cir. 2009). Moreover, these issues were not raised on direct appeal, so they are procedurally barred from being raised here. *See Frady, supra.* Finally, even if the issues could be raised here, they lack merit for the reasons stated in the rulings on the motions to suppress.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court DENY the Motion to Vacate (ECF No. 14).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions." 11th Cir.

R. 3-1 (2016).

     If counsel do not intend to file objections, they shall file a notice advising the

District Court within FIVE DAYS of this Report and Recommendation.

     **DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach

County, in the Southern District of Florida, this 21th day of October 2021.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE